## J. G. MORROW *v.* MULBERRY LUMBER COMPANY and ST. PAUL INSURANCE COMPANY

CA 82-78                                                635 S.W.2d 283

Court of Appeals of Arkansas
Opinion delivered June 30, 1982

*Sam T. Heuer,* for appellant.

*Laser, Sharp & Huckabay, P.A.,* for appellees.

GEORGE K. CRACRAFT, Judge. The appellant, J. G. Morrow, brings this appeal from an order of the Workers' Compensation Commission denying him benefits. He maintains that the finding of the Commission that his disability was not the result of a compensable injury is not supported by substantial evidence. He contended before the Commission, as he does here, that his disability was work related and resulted from an accidental injury which occurred or on about July 7, 1980. The appellee, Mulberry

Lumber Company, contended that any disability from which he now suffers was not work related but resulted from a diseased condition of long standing. The Administrative Law Judge reached the following conclusion which was affirmed and adopted in its entirety by the Full Commission:

> After having reviewed the evidence in its entirety in this case, even when viewing such in the light most favorable to the contentions of the claimant, as we are required to do, I believe the greater weight of credible evidence and the several inconsistencies as contained in this record simply do not form a basis upon which award of workers' compensation benefits can be made. This having been stated and full well realizing that the search for the truth is ofttimes a nebulous task I feel left with no reasonable alternative under the state of this record than to respectfully deny and dismiss the claim for benefits.

In claims before the Workers' Compensation Commission the burden is upon the claimant to prove entitlement to benefits by a preponderance of the evidence. In determining whether that burden has been met the Commission is not bound to accept the testimony of a claimant or any other witness in its entirety. The credibility and weight to be afforded the evidence is exclusively within its province. *Hammer* v. *Intermed Northwest,* 270 Ark. 262, 603 S.W.2d 913 (Ark. App. 1980). On appeal we review the record only to determine if their findings are supported by such substantial, relevant evidence as reasonable minds might accept as adequate to support their conclusion. The issue is not whether this court would have reached the same result as the Commission or whether the evidence would have supported a finding contrary to the one made. The question here is solely whether the finding made by the Commission is supported by substantial evidence. *Clark* v. *Peabody Testing Service,* 265 Ark. 489, 579 S.W.2d 360 (1979). We find that it was.

The appellant contended that he was injured on or about July 7, 1980 while working in appellee's lumber yard. He testified that on that date the band on a stack of lumber

burst and he was required to restack it. As he was doing this he was twisting around and felt a tear "in his back." He stated that he rested for a while, finished up that day, and returned to work at least the next two days before leaving to see a doctor.

Although he did not file a claim for benefits until January 30, 1981, he testified that on leaving the job on July 10, 1980 he told his supervisor that he had hurt himself while working and was leaving to see a doctor. On July 10th he was seen by his regular physician, Dr. Calaway, who referred him to an orthopedic surgeon. He was admitted to the Veterans Hospital at Fayetteville on the following day for disability to his back. He was ultimately seen by Dr. Lockhart on March 30, 1981, shortly before the hearing for the purpose of evaluation. Dr. Lockhart, on the history given him by appellant at that time, rated his permanent partial disability to his body as a whole at 25%, "of which probably 10% preexisted the traumatic aggravation of his spine in July of 1980."

There was evidence from appellant, his wife and daughter that he had been previously admitted to the Veterans Hospital in 1963 for back pains but had manifested no discomfort or disability since that time. The evidence was confusing as to whether he told his wife or daughter that he had twisted his back on the job at the time he was first seen by Dr. Calaway on July 10th or at the time the daughter admitted him in the Veterans Hospital on July 11th. The wife testified, however, that she had communicated by telephone to the employer that he had "hurt himself down there." Both testified that he had had no difficulty with his back or disability resulting from it prior to July 10th when he was seen by Dr. Calaway.

Dr. Calaway was the first doctor to see him in July of 1980. There is no report in the record of Dr. Calaway's findings, but in a letter he indicated that at the time he saw appellant in July he was "complaining of back trouble." There was no mention of a history of traumatic injury. Dr. Calaway referred him to Dr. Knight who saw him on July 10, 1980 and found him suffering from "*chronic* lumbar sacral

strain and acute exacerbations." Dr. Knight's report contained no mention of a history of industrial injury. Dr. Knight arranged for the appellant to be admitted to the Veterans Hospital at Fayetteville. Upon his admission in that hospital Dr. Taylor noted "this 59 year old veteran was admitted on 7/11/80 complaining of *chronic* lower back pain with radiation into the right hip and leg, *having noted progressive discomfort and disability since 1963.*" The appellant was again admitted to the Fayetteville Veterans Hospital on October 8, 1980, at which time Dr. Husain made a reference to "several prior admissions for *chronic* low back pain "diagnosed as disc degeneration" and referred him to the Veterans Hospital in Little Rock. Upon his admission to the Little Rock hospital Dr. Gocio diagnosed his problem as "low back pain, etiology unknown." He reported that the patient was transferred from the Federal Veterans Hospital "with a one year history of back and right leg pain." After he was released from that hospital he was seen by Dr. Sisco on December 10, 1980. Dr. Sisco reported "I saw Mr. Morrow, who stated he had difficulty with pain in his back since 1963." He diagnosed arthritis of the spine and deterioration of the backbone. He was seen by at least three other doctors before he went to Dr. Lockhart for evaluation. None of the medical reports made prior to his visit with Dr. Lockhart on March 30, 1981, made any reference to an accidental injury which occurred on July 7, 1980 or at any other time.

While the appellant testified that he had advised his immediate supervisor Earl Reeves of the occurrence of the injury immediately after it happened, Mr. Reeves unequivocally denied that the appellant or any member of his family had ever advised him that appellant had injured his back while working. To the contrary he testified he had no knowledge of any such incident until the claim was filed in January of 1981 and that for a long period prior to July 7th the appellant was taking off to see a doctor at least two times a month. He did not know why he was seeing a doctor and was never told. Mr. Reeves testified that after appellant was hospitalized in July of 1980 he asked appellant what the doctors had found, to which appellant answered "I don't know." Although the appellant, supported by his wife, testified that such an accident did occur on July 7th, in an

interview by representatives of the employer he had made no mention of that date, but reference was made to a feeling that he had "been going down since the first of the year."

When these and many other inconsistencies and conflicting facts and factors pointed out by the Commission in its opinion are considered, reasonable minds could easily conclude, as did the Commission, that appellant failed to prove by a preponderance of the evidence that his present disability resulted from an accidental injury arising out of his employment. We find the decision of the Workers' Compensation Commission to be supported by substantial evidence.

Affirmed.

GLAZE, J., not participating.